IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

WESTERN DISTRICT—PITTSBURG, 1873.

## Watterson *versus* The Allegheny Valley Railroad Company.

1. A landowner for $1 released to a railroad company the right of way, &c., through his land, and sold them a lot on which to erect a depot. In an action against the company for not erecting the depot, parol evidence that its erection was the consideration for the release, was admissible.

2. The agreement for erecting the depot being executory, it did not conflict with the release.

3. The court charged that the evidence to establish the contract "must be strong, clear and indubitable." *Held* to be error, the ordinary measure would be sufficient under the evidence.

4. If the contract were established the measure of damage for its breach would be the additional value that would have accrued to plaintiff's land had the depot been erected.

5. Profits of business could not be considered; but the increased value of the property as a place of business could.

October 6th 1873. Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the Court of Common Pleas of *Allegheny county :* No. 204, to October and November Term 1873.

This was an action on the case, brought May 26th 1869, by James Watterson against The Allegheny Valley Railroad Company.

The plaintiff, by his declaration, averred that the defendants, in consideration of his granting and conveying to them a right of way for a double railroad track over his land, for the nominal consideration of one dollar, promised him that they would locate on

(208)

[Watterson *v.* Allegheny Valley Railroad Co.]

his land a railroad station and depot for freight and passengers, and thereby promote the business at the place, the plaintiff being a forwarder and warehouseman there; that the defendants also promised him that they would remove the blacksmith shop, warehouse and buildings of the plaintiff, and erect the same at other convenient places on his land, and build a stone wall on his land along the line of the railroad, for the safety and preservation of his land and premises. Plaintiff further averred that, relying on these promises, "he did, for the consideration aforesaid," make to the defendants a grant of the right of way, "expressing in the deed the nominal consideration of one dollar, which was never in fact paid;" but that the defendants did not establish on the plaintiff's land "a railroad station and depot for freight and passengers," and did not remove the blacksmith shop, warehouse and buildings, and did not construct a stone wall along the railroad; "whereby the plaintiff hath been and is deprived of great gains and profits, which he could and otherwise would have acquired and gained as a warehouseman and forwarding merchant, at the place aforesaid, by the location and establishment of the said railroad station and depot; and hath also been deprived of and lost the great profit, advantages and gain which he could and otherwise would have acquired and gained by the enhanced and increased price and value of his said land, &c., by and through the establishment of said railroad station and depot, and the transaction and promotion of business thereby; and also by means thereof the plaintiff was prevented from selling divers lots, pieces and portions of his said land at and for large sums of money, &c., which he could and otherwise would have acquired and gained; and also by means of the premises, and for want of the said stone wall, which the defendant so as aforesaid undertook and promised to construct and build, the plaintiff's land and premises have been and are greatly injured and damaged and depreciated in value, &c.; and also by means of the premises and by reason of the construction of said railroad in, upon and through the land aforesaid of the plaintiff, the said land, blacksmith-shop, warehouse and buildings have been greatly injured, wasted and depreciated in value, &c.; and also by means of the premises the plaintiff hath been and is greatly hindered, interrupted and delayed in his business and in the use, occupancy and enjoyment of his said land and premises, to the damage of the plaintiff twenty thousand dollars, and therefore he brings suit, &c."

The case was tried September 19th 1871, before Collier, J.

The plaintiff gave in evidence his release to the defendants for damages for the right of way of their railroad through his land.

He then testified that William Phillips, the president of the defendants, and William McCullough, the vice-president, were at his house when he signed the release; the road had not then been

24 P. F. SMITH—14

[Watterson *v.* Allegheny Valley Railroad Co.]

made to his place; they came with the instrument drawn up. "They induced me to sign it by agreeing to move my building: they were to build a stone wall back of my house; and a bridge across the run. They were to build a freight and passenger depot on a piece of ground I deeded to them the same day. I wanted them to give it to me in writing, as it was not in the deed. Mr. Phillips said he would give it to me any time, as he had not time then; he had to go away. He said it was not necessary, but he would give it any time. They said they would give their word of honor that they would do everything they had promised. This was before I signed the release. I would not have signed the release if I had not believed them. They said it would make my property worth double to have the depot there. They were there about an hour; maybe not so long. They went off immediately after I signed the deed of release. They had been there several times before that day on the same business. McCullough was there some three or four times, and Mr. Phillips, I think, twice. I think the second time they came, they left the deed for the ground for me to examine. The right of way was embodied in that deed at first—both the ground for the depot lot and the right of way. I refused to sign it. He said it was not drawn up according to orders at all. The solicitor had drawn it up, he said. The next time they had both deeds with them. I then executed them, after an alteration being made in the deed for the ground. They talked over this matter before I signed the release at several interviews. They never did what they said. * * * I told Mr. McCullough that there was a report out that they were going to take the depot to Phillipsburg. He assured me they would go on and put it up, just as they had agreed to. They never put the building up. * * * Phillips said if I did not let it go on my ground, he would have to put it further up, and that would injure my property. I told him I would let him have about an acre to put a depot on for a thousand dollars, and would give him the right of way rather than it should go below. Didn't tell Col. Phillips I would take a thousand dollars and make him a release and deed. I would not have taken $2000 at that time for that lot for any other purpose. * * * I told him I would give him an acre to put the depot on for one thousand dollars, and they were not to use it for anything else. I was paid the one thousand dollars. The terms agreed upon about the right of way were, ' that they were to take the buildings down and build the roads.' He, Phillips, did agree to build a depot on the lot that he gave $1000 for. They pledged their honor that they would do these things. The promises were made as to both bargains. I did not ask Col. Phillips to put in the $1000 deed a covenant in regard to the freight and passenger depot. My wife would not sign the deed till the covenant about taverns, &c., was inserted. I requested

[Watterson v. Allegheny Valley Railroad Co.]

that it be put in writing as agreed, and they said it was not at all necessary. Col. Phillips said he would put a general freight and passenger depot to supply that part of the country. I say positively that part of the conversation about the buildings, &c., was before the papers were signed by me."

Plaintiff proposed to testify how much more his property would have been worth at any time after defendants could have built their freight and passenger depots, as agreed on, if they had built them, up till the time of bringing this suit, than it was worth during that period without the depots.

Defendant objected to the offer, for the reason that the evidence is speculative and uncertain as to the damages alleged to have been sustained, &c.

The court rejected the offer and sealed a bill of exceptions.

Mary A. Watterson, wife of plaintiff, testified:—" Recollect Col. Philips and Mr. McCullough coming to our house about the right of way. Recollect signing the deed for the depot lot. They were there three times, I think. Their first errand was the right of way. The second time they came they proposed to buy the acre of ground for a freight and passenger depot, and what an advantage it would be to our property—that it would double it. Col. Phillips and Mr. McCullough came the day we signed the deed. They sent for me to come and sign the paper. I was not willing to do it unless Col. Phillips would give it 'in writing' all that he intended and promised to do. Mr. Phillips said the property would be worth double. I said I could not see it. I said, how would it be if our living was taken away from us? We were then getting our living by store and freight. He said Watterson could make more money after they got their buildings up by selling salt; that business would be 'brisker' than at present. I wanted it put in writing, or put on the deed I signed. They said they had not room, or had not time, but would give me papers to that effect if I would sign it. Phillips said if we would give them the right of way the property would be worth so much more. I insisted on their doing what they said. I said I would not have a tavern or restaurant on the lot. Phillips said to McCullough that it did not amount to much, they could put that in. They were to have the right of way for one dollar, if they would go on and put up the building, that is, if I understand the writings. This was all before the papers were signed. After the papers were signed they both left. I was out several times and was waiting for Phillips and McCullough to give us in writing what they agreed to do. They sent for me again. Mr. Phillips said it was not necessary, and they had not time at present; that he would give me his word and honor that he would do all he agreed to. Then I took the deed and signed it, but told the justice of the peace that I did not do it with a good will, without they would give us the

[Watterson v. Allegheny Valley Railroad Co.]

writings. Had no further talk, only Mr. Phillips told me not to be uneasy, that they would do all they agreed to do. * * *

" Col. Phillips said $1000 was too much. He said we ought to give him the right of way and the ground for less, as putting the buildings on would double the property. He said the railroad would make our property double what it was. He used that as an argument. Phillips first asked for the acre of ground. The right of way was not then mentioned. Phillips came back and said he would give the thousand dollars, and that was the bargain for that lot. They were to have the right of way for $1 if they would do what they said. This was with Col. Phillips. He said he would put up the buildings and make that the main point for Clarion county."

Esq. Hull testified : " I was sent for to acknowledge some papers. Col. Phillips and McCullough were there. Mrs. Watterson said she would not sign the deed till it was put in, that no tavern or eating-house should be erected on the premises. After this was inserted, Mrs. Watterson said 'she would like to have the writings, that you are going to put the depot here,' or words to that effect. Mr. Phillips said they had not time to do it that day, but they would do it any other time. Mrs. W. then picked up the deed, went into the dining-room and signed it with a very good will. After taking Mrs. W.'s acknowledgment, I took the acknowledgment of Mr. W. to the right of way. He signed and acknowledged it. I then went away. I think I did not hear her insist on anything else going in the deed except what I have stated. * * *

" Mrs. Watterson objected to signing the deed till the condition about the tavern and restaurant were inserted. This was all she demanded to go in the deed."

There was other evidence in corroboration of the testimony of the plaintiff and Mrs. Watterson, and very much evidence as to the damage sustained by the plaintiff by reason of the location of the road and the failure to erect the depot, &c.

For the defendants, Wm. Phillips, president, testified : " I went up in company with Mr. McCullough and Mr. Wright. Met Mr. Watterson, walked with me around the premises. I asked him what he would take for a certain piece of ground near his house, containing about an acre. * * * I asked him what he would take for it. He said $1000. I told him I thought it too much. I went to Watterson and offered if he would give me that piece of ground and the right of way for $1000 I would close with him. He agreed to take it. We were to make a stone wall, move his stable, or pay for a school-house. If the warehouse should have to be moved, we were to do it. I told Mr. Watterson that we wanted to build a freight and passenger depot on the lot, but it was never spoken of as a part of the consideration. That was the

agreement we made. Mr. Golden made out the deed, and in it he embodied the right of way. When the paper was presented to me I stated it was not drawn in the manner I would like to have. I preferred to have it divided—put in the $1000 for the lot and for the deed of right of way. I wanted the consideration for right of way to be put in as one dollar. About three weeks after I had the deed prepared, as agreed upon with Mr. Watterson, we had the deed of release, and went to Mr. Watterson. Presented the deeds to Watterson. He looked over them. Watterson read over the papers, then went into an adjoining room and talked to Mrs. Watterson. Came out and remarked Mrs. Watterson did not feel willing to sign the deed for this acre of ground. I asked what the objection was. He said she was not willing to sign it unless we were willing to insert the provision about the tavern or restaurant. I told Mr. Watterson that I thought it was entirely unnecessary to insert that, for our charter prohibited us from embarking in tavern-keeping business. He still insisted, and I turned to Mr. McCullough and directed him to put it in. It was put in, then handed it to Mr. Watterson, who took the pen and signed it. His wife was in the room at the time. Mrs. Watterson took the deed into another room, Esq. Hall accompanying her. She signed the deed. Release was signed at the same time. Both were acknowledged by Esq. Hall. Nothing was said that day except what I have told you. * * * Neither Mr. nor Mrs. Watterson ever asked me to even build a depot. They asked me to put in writing the building of a stone wall, or pay him for doing it—to take down, or pay him for it, the wash-house, school-house, stable and blacksmith-shop, and we were to pay for the stable. I told him that that was not necessary, and pledged him that it should be carried out precisely as agreed upon, for we were going right on. Neither Mr. or Mrs. Watterson asked me to put in writing that we would build a depot on the lot we bought. I paid the thousand dollars, built the stone wall, two hundred feet long, four feet at top." * * *

This witness testified, also, as to the damage sustained by plaintiff. There was evidence for the defendants corroborating Phillips's testimony.

The plaintiff submitted the following points, which were refused:—

"1. If the jury believe that the plaintiff delivered to the defendant's agents a release of the right of way through his land in Clarion county, and which defendant adopted and located its road thereon; and that the consideration for such release was the parol agreement, on the part of the defendant, to erect a stone wall on the north side of its road, past his buildings—remove plaintiff's out-buildings to another site or pay for the removal thereof, and to build a freight and passenger depot on the land conveyed by

[Watterson *v.* Allegheny Valley Railroad Co.]

plaintiff to defendant—that the release of such right of way is a valuable and sufficient consideration to support the premises made on behalf of defendant.

" 3. If the jury find from the evidence that the defendant violated said contract, then the measure of damages which the plaintiff is entitled to recover in this action is the value of his contract; that is, what it would have been worth to him if defendant had performed its contract.

" 4. If the jury believe that defendant procured said right of way in consideration of the promises of its agents that it would build a stone wall past his buildings, remove his out-buildings to another site and erect a freight and passenger depot on the land bought from him, and that defendant afterwards refused to perform this agreement, then that would constitute such a fraud on part of defendant as would entitle the plaintiff to the largest measure of damages for the loss of his bargain, with interest thereon."

The plaintiff's fifth point was affirmed. It was:—

" The plaintiff is entitled to recover the difference in value between what his property was worth before the railroad was located through it and after it was completed, with interest on such amount."

The defendant's first point, which was affirmed, was:—

" The deed granting to the company the right of way for their railroad through the plaintiff's land is in law a solemn instrument, and cannot, in whole or in part, be altered or changed as to the consideration expressed therein, unless upon the ground of fraud, accident or mistake."

The court charged:—

" 1. You must be satisfied by clear, strong and indubitable evidence that the agreement set up by plaintiff, as to erecting the freight and passenger depot, was made, and that it was not reduced to writing or put in the deeds, or either of them, because Colonel Phillips represented that it was not necessary, and that he would give the papers at any time, and that he would perform the agreement as he had promised. The burden is upon the plaintiff. The defendant has a right to stand upon its deed, and it can only be contradicted as to the consideration on the ground of fraud, as alleged, by clear, strong and indubitable evidence.

" 2. If you are not satisfied that the evidence is clear, strong and convincing on this point, then your verdict should be for the plaintiff for whatever damages he has sustained in removing his buildings; the blacksmith-shop and loss of rent therefor; the lumber of the warehouse destroyed, and what it cost him to complete the stone wall, if that was not built according to the agreement.

" 3. [But if you should be satisfied that the evidence is clear, strong and indubitable that there was a contract relative to the

[Watterson *v.* Allegheny Valley Railroad Co.]

freight and passenger depot, and that it was not inserted in the deed of release by reason of the representations of defendant, as alleged, then the measure of damages would be the value of the plaintiff's property at the time of the taking, deducting the advantages from the building of the railroad, if any, together with any annoyance that would interfere with the enjoyment of his house or property. But you cannot allow damages for the loss of business to the plaintiff occasioned by the railroad diverting the trade from him.]

" In either view of the case your verdict must be for the plaintiff."

The verdict was for the plaintiff for $991.25.

·He took a writ of error, and assigned for error the refusal of his 1st, 3d and 4th points, and affirming defendant's point, the part of the charge in brackets and the rejection of his offer of evidence.

*R. Pollock,* for plaintiff in error.—The measure of damages was the value of the contract. That was to be ascertained by the business, &c., a depot would attract to the place : Hoy *v.* Gronoble, 10 Casey 10 ; Wolf *v.* Studebaker, 15 P. F. Smith 459 ; Meason *v.* Kaine, 17 Id. 126.

*J. H. Hampton* (with whom were *J. S. & A. P. Morrison* and *J. Dalzell*), for defendants in error.—Whether the depot would have advanced the price of the land was conjecture, and therefore damages on that basis would be speculative : McKnight *v.* Ratcliff, 8 Wright 169. The affirmance of the plaintiff's third point would have allowed the alteration of a solemn instrument by parol, which would have been error : ·Kennedy *v.* Erie and W. Plankroad, 1 Casey 225 ; Seitzinger *v.* Ridgway, 4 W. & S. 472 ; Sennett *v.* Johnson, 9 Barr 335 ; Bertsch *v.* Lehigh Co., 4 Rawle 130 ; Snyder *v.* Snyder, 6 Binn. 483 ; Beeson *v.* Hutchison, 4 Watts 442 ; Stub *v.* Stub, 3 Barr 255 ; Woods *v.* Wallace, 10 Harris 171. To reform a writing on the ground of fraud, the evidence should be clear, precise and unmistakable : Irwin *v.* Shoemaker, 8 W. & S. 75 ; Morrison *v.* Morrison, 6 Id. 516 ; Markley *v.* Swartzlander, 8 Id. 177 ; Cochran *v.* Perry, Id. 265 ; Stine *v.* Sherk, 1 Id. 195. The rule of the court for the measure of damages was correct : Hottenstine *v.* Railroad Co., 11 Wright 28 ; Harvey *v.* Railroad Co., Id. 428 ; Hornstein *v.* Atlantic Railroad Co., 1 P. F. Smith 87.

The opinion of the court was delivered, January 10th 1874, by Agnew, J.—This case turns on the alleged agreement made by Mr. Phillips, the president, in behalf of the railroad company, to erect a freight and passenger depot on the one acre of land sold by the plaintiff to the railroad company for the sum of $1000. .The other portions of the agreement relating to the wall and

buildings were not denied, and so far as they were not performed, the jury allowed damages. The first question in the case arises on the measure of evidence necessary to establish the agreement for the erection of the depot; and this turns on the release of the right of way given by the plaintiff to the company. This paper is not printed for our inspection, but we presume, as there has been no controversy upon its terms, it was in the ordinary form, giving the right to enter and build the road, and releasing the value of the land occupied, and all damages arising out of its location and use. If the proof of the contract to build a depot on the one-acre lot does not contradict the terms or legal effect of the release, only the ordinary measure of evidence would be required to establish the contract, to wit: so much as would incline the weight of evidence to the side of the plaintiff. But if the evidence contradicts the release or its legal effect, it must possess the measure necessary to prove fraud or plain mistake, to wit, that which is clear and satisfactory.

In what respect does the agreement to erect the depot contradict the release? We can perceive none. It does not contradict the consideration of one dollar paid by the company: that money might be paid and the contract also be made to build the depot. Indeed, the nominal consideration in the release would lead to a ready inference, that something else was the consideration of a right of way through a mile and a quarter of land. It does not contradict the terms of the release itself. These are all admitted by the plaintiff, and indeed he rests upon them as the reason and consideration of the railroad company's promise to erect the depot. In no respect can we perceive that the plaintiff gainsays or desires to disprove or alter the release. On the other hand, it does not seem to follow, because the railroad company agreed to pay a nominal consideration of one dollar, that they did not promise to do something else as an equivalent for the right they obtained. The agreement to erect the depot is independent and executory—something to be done in the future; and does not conflict with the release. Both may stand together. The case of Weaver *v.* Wood, 9 Barr 220, is directly in point on this question. To this may be added Hayden *v.* Mentzer, 10 S. & R. 323; Strawbridge *v.* Cutledge, 7 W. & S. 394. The court erred, therefore, in the measure of proof, which, said the court, must be clear, strong and indubitable.

The next question is upon the effect of the agreement. The contract for the depot, when found by the jury, would stand before them with equal effect, as if it had been reduced to writing, and then arises the question of damages. The court below held the measure of damages to be the same as that given to the owner of land taken by the company under a legal proceeding; that is to say, the difference in the value between what his property was

[Watterson *v.* Allegheny Valley Railroad Co.]

worth before the railroad was located through it, and its value after completion of the road, with interest on such amount. See answer to plaintiff's fifth point. But if a written agreement to build a depot had been given when the release was delivered, how would the case stand? Clearly this would have introduced a new element. Whether this would increase or diminish the value to be assessed in a legal proceeding would not now be a question; for this, it is to be presumed, the parties considered when they made the contract. It must be presumed the company considered it better for them to erect the depot, in order to obtain the right of way, than it would be to go to law and take the chances. Such being the effect of the agreement, the terms of the question of damages would be changed. Instead, then, of the question being the difference in value of the land before and after the building of the road, considering all advantages and disadvantages to the owner, the question would be upon the additional value which would accrue to the plaintiff's land in the event of erecting such a depot as the contract called for. Under the contract, whatever specific advantages would accrue to the land from the adjacent depot and station, would have to be added to the plaintiff's claim, for this would be his loss in case of a breach of the contract. While the profits of his business cannot be added to his damages, for these are speculative and uncertain, the business advantages, which constitute the characteristics of the land and give it value, are not to be thrown out of consideration in determining the value of the land. Clearly, if the depot and station would make the plaintiff's land more valuable as a place of business, by bringing to it business it would not possess without them, they give greater value to the land to the extent of the increase by reason of their being placed there, and therefore, fall within the scope of the contract. They were the thing bargained for, and the consequent loss would fall within the damages, to the extent they would have added to the value of the land. The ruling of the court excluded this element of value given by the contract, and confined the measure of damages as if no contract had been made. This was an error. In other respects we perceive nothing requiring comment.

Judgment reversed, and a *venire facias de novo* awarded.