# Miller v. Belmont Packing & Rubber Co., Appellant.

*Corporation—Contract—President—Authority of president to make contract—Accepting benefits—Authority of agent—Waiver.*

1. Where a corporation is chartered "for the purpose of manufacturing packings," and its by-laws provide that the president shall have "entire charge of the general business of the company as authorized by its charter," and the president enters into a contract to pay royalties for the use of a patent for a form of packing, the corporation will be bound by the act of the president.

2. One who accepts and continues to take and retain the benefits of an agreement, cannot be heard to deny the authority of the agent who acted for him in the making thereof.

*Contract—Agreement to pay royalties on patent—Evidence—Charge—Failure to ask for instructions.*

3. In an action against a corporation to recover royalties for the use of a patented invention, where the president of defendant admits on the stand that the company had "manufactured and sold" articles under the rights assigned by plaintiff, and still continues to do so, although denying the agreement to pay royalties, it is not

reversible error for the trial judge to omit to place before the jury an issue of fact whether or not defendant had made sales of the patented article; and particularly is this so, where defendant's counsel failed to call the judge's attention at the trial to the omission.

*Contract—Patented article—Royalties — Accounting — Time — Question for court—Consideration—Parol evidence.*

4. Where a corporation agrees orally, through its president, to pay to the patentee royalties on a patented article, and subsequently takes an assignment of the patent from the patentee, the obligation to pay royalties will subsist so long as the corporation continues to sell the patented article. The company, after a reasonable time, and on demand, will be bound to account to the patentee for the sales made by it; and, if all relevant facts are undisputed, the reasonableness of the time will be for the court to determine.

5. In such case, as the contract to pay royalties is in parol there is no room for the application of the rule that a written agreement may not be varied by parol evidence. Although the assignment mentions "one dollar" as the consideration, plaintiff will not be prevented from showing the real consideration involved.

*Appeals—Pleadings—Variance—Question in appellate court— Neglect to raise question in lower court—Statute of limitations.*

6. Where a defendant neglects to raise a question as to a variance between the pleadings and proof at a proper time in the lower court, he cannot raise the question on appeal.

7. The same rule applies where the question of the statute of limitations was not raised at the trial, nor by any assignment of error.

*Practice, C. P.—Act of May 14, 1915, P. L. 483—Account render—Judgment — Quod computet — Constitutional law — Title of act—Statutes—Engrafting new remedy on assumpsit—Act of April 22, 1905, P. L. 286.*

8. In an action of assumpsit where plaintiff asks "for an account" as provided by the Act of May 14, 1915, P. L. 483, and the trial court, after a verdict for plaintiff, enters formal orders, discharging a rule for a new trial, and refusing a motion for judgment n. o. v., and thereafter enters an order requiring defendant "to account to plaintiff for all sales," etc., the order for account is a proper one, and will be considered as a judgment quod computet.

9. The fact that the Act of 1915 merely states that "plaintiff may ask for an account," without giving any further remedy in the premises, will not prevent the court from making a proper order to carry out the remedial intent of the act.

10. The courts have no power to set aside any part of a statute, be it practice act or one dealing with substantive law, unless the conclusion that it is either unworkable or unconstitutional is inevitable, and the necessity for so declaring inescapable.

11. Even then, the court, in reality, only judicially ascertains that certain apparent imperfections in the legislation under attack do in fact exist; and, when these faults are thus determined, if fundamental, the act falls of its own weight, the judicial pronouncement of invalidity simply serving as formal, binding, general notice to that effect.

12. Legislation should not be held invalid on the ground of uncertainty, if susceptible of any reasonable construction that will support and give it effect.

13. The Practice Act of May 14, 1915, P. L. 483, entitled "An Act relating to practice in the courts of common pleas in actions of assumpsit and trespass......; prescribing the pleadings and procedure to be observed therein, and giving the courts power to enforce its provisions," is sufficiently comprehensive in its title to include provisions (like section 11) which enlarge the pleadings, procedure and practice in assumpsit, so as to permit plaintiff to aver and prove facts, which, if found to be true, entitle him to an accounting from defendant—particularly where the account is one-sided, and where plaintiff has a legal and equitable right to discovery.

14. It was not beyond the power of the legislature to engraft the remedy given by the Act of 1915, section 11, upon the action of assumpsit.

15. Section 11 of the act is not rendered invalid by reason of the fact that defendant, as to a counterclaim or set-off on his part, is afforded no similar right to ask for an accounting; if this is an incongruity, the legislature can remedy it.

16. If the Act of April 22, 1905, P. L. 286, applies at all to this case, still the judgment following the verdict was appropriate, considering the pleadings, with the admissions made and issues determined.

*Appeals—Interlocutory order—Judgment quod computet—Accounting—Acts of 1840, P. L. (1841) 1; June 24, 1895, P. L. 243.*

17. Where the court, after a trial and verdict for plaintiff in an action of assumpsit in which plaintiff has pleaded and proven his right to an accounting, enters an order for an accounting, such order will be considered a judgment quod computet; but being such, it is interlocutory and nonappealable.

18. Section 18 of the Act of 1840, P. L. (1841) 1, 7, providing for judgment of quod computet, being in nowise inconsistent with the Act of 1915, is still extant.

19. An action at common law for an account is not within the Act of June 24, 1895, P. L. 243, giving the right to an appeal from a decree in equity for an accounting.

Argued April 28, 1920. Appeal, No. 38, Jan. T., 1921, by defendant, from judgment of C. P. No. 5, Phila. Co., Dec. T., 1915, No. 2934, on verdict for plaintiff and for an accounting in case of Norman B. Miller v. Belmont Packing & Rubber Co. formerly known as Clement Restein Company. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING and SIMPSON, JJ. Appeal dismissed.

Assumpsit for royalties. Before MARTIN, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff on which the court entered an order directing defendant to account. Defendant appealed.

*Errors assigned* were (1) order directing defendant to account; (2) refusal of defendant's motion for judgment n. o. v.; (3-7) portions of charge and answers to points, quoting them.

*W. W. Smithers*, for appellant.—Sections 11 and 19 of the Practice Act of 1915 are unconstitutional.

The act introduced modifications so foreign to the action of assumpsit as to be incapable of effect save by the exercise of the chancery powers of the court: Menges v. Oyster, 4 W. & S. 20; Lee v. Gibbons, 14 S. & R. 105; Logan v. Richardson, 1 Pa. 372; Lafferty v. Lafferty, 174 Pa. 536; Beatty v. Safe Dep. & T. Guaranty Co., 226 Pa. 430.

There was no warrant in law for the decree of account because the legislature did not accomplish the purpose assumed by the court to have been intended and attained

in the act: Backer v. Remov, 69 Pa. Superior Ct. 138; Pennell v. Grubb, 13 Pa. 532.

It may fairly be said that sections 11 and 19 are so foreign to the general purpose of the act, so clearly independent insertions, that their rejection would disturb not another section or line and leave us with a most satisfactory and highly commendable Practice Act.

The motion for judgment was not properly disposed of: Lipsky v. Stolzer, 236 Pa. 151.

The allegata and probata do not agree, and the suit cannot be maintained: Shenango Limestone Co. v. Buffalo R. & P. Ry., 262 Pa. 446; Clark v. Lindsay, 7 Pa. Superior Ct. 43; Hennessy v. Anstock, 19 Pa. Superior Ct. 644.

Restein had no authority: Allegheny County Workhouse v. Moore, 95 Pa. 408; Pollock v. Car Co., 230 Pa. 136; Interstate Securities Co. v. Bank, 231 Pa. 422; Central Pa. T. & S. Co. v. Thompson, 112 Pa. 118; De-Turck v. Matz, 180 Pa. 347.

*Latimer P. Smith*, for appellee.—The act is constitutional: Germantown Trust Co. v. Powell, 265 Pa. 71; Com. v. Fulton, 263 Pa. 332; Com. v. Freibertshauser, 263 Pa. 211; Jewell's Est., 235 Pa. 119; Com. v. Rink, 71 Pa. Superior Ct. 579; Backer v. Remov, 69 Pa. Superior Ct. 138; Com. v. Herr, 229 Pa. 132; Charters Creek Bridge, 235 Pa. 365; Taylor v. Bickel, 6 Pa. Superior Ct. 229.

There was sufficient evidence to establish the contract: Kroegher v. McConway, 149 Pa. 444; Weaver v. Wood, 9 Pa. 220; Watterson v. Allegheny Val. Ry., 74 Pa. 208; McGary v. McDermott, 207 Pa. 620; Press Pub. Co. v. Reading News Agency, 44 Pa. Superior Ct. 428.

The evidence disclosed that Restein had authority to bind defendant: American Car & F. Co. v. Alexander Water Co., 218 Pa. 543.

Even though Restein was without authority to enter into the alleged contract defendant cannot avail itself

of that fact, since it is admitted that the plaintiff assigned the patent for the round hole packing to it and that it has sold and is still selling quantities of the packing since that time: Presbyterian Board v. Gilbee, 212 Pa. 310; Wrightsville Hardware Co. v. McElroy, 254 Pa. 422; Bank v. Lake Erie Asphalt Co., 233 Pa. 421; Hartzell v. Ebbvale Mining Co., 239 Pa. 602.

OPINION BY MR. JUSTICE MOSCHZISKER, June 26, 1920:

Norman B. Miller sued the "Belmont Packing & Rubber Co., formerly known as Clement Restein Co.," and recovered a verdict upon which an order for an accounting, as hereinafter more fully stated, was entered; a motion for judgment n. o. v. having been dismissed, defendant appealed.

Plaintiff's declaration avers that, in March, 1909, defendant corporation, by its "president and duly authorized agent, Clement Restein," orally contracted to pay Miller three cents a pound on all "piston rod packings manufactured and sold by defendant" under certain patent rights which plaintiff had assigned to it, until the expiration of such patents; that the assignments of these inventions, first, on November 16, 1908, for a square hole piston rod packing, and next, on April 8, 1909, for a round hole packing, were executed by plaintiff, relying upon the "said oral promise" to give him the beforementioned royalty; that, although defendant has manufactured and sold large quantities of the patented article, the number of pounds is unknown to plaintiff; an accounting was demanded and refused; and, "by reason of defendant's failure and refusal to account, plaintiff asks the court to enter an order upon defendant to render an account to plaintiff in the premises, so that he may have judgment against defendant for the amount shown to be due him by such account."

An affidavit of defense was filed, which admits many of the averments of the declaration, including those as

to the actual assignment of the patent rights, but denies the alleged promise to pay compensation therefor, and adds that, if any persons undertook, on defendant's behalf, to contract for a royalty to plaintiff, such undertaking was neither authorized nor ratified; it further states "said patent rights were derived in consequence of the assertion on the part of plaintiff that he had conceived and invented certain ideas concerning piston rod packings, which in fact had been developed and evolved by certain experiments during the usual course of business of defendant, concerning which plaintiff manifested an interest by reason of his being employed by defendant"; and, in this connection, that plaintiff was "permitted, on his request, to assert himself as the inventor and to make application for the necessary patents for the use and benefit of defendant," but these patent rights were not assigned to the latter by plaintiff in reliance upon any prior oral promise to pay him therefor; also, that plaintiff was in the employ of defendant when the patent rights were assigned, so continuing until January, 1915, and, during all that time, made no assertion of "the existence of any such contract as set up in this case, nor was a demand ever made for any amount claimed to be due pursuant thereto, or of any duty of defendant to account to plaintiff." The affidavit contains no denial of sales under the round hole patent, defendant admitting it "manufactured and sold" the article in question, and contenting itself with the averment that "it is immaterial what amounts of said piston rod packings had been sold" because "defendant is under no obligation to account for same to plaintiff."

At the trial, Miller abandoned all claim for royalties on the square hole packing, frankly saying he had given that patent to defendant. Although he still persisted in his claim for royalty on sales "under the round hole patent," yet no attempt was made either to show by his own testimony or to elicit from defendant's witnesses the amount of these sales; nevertheless, when on the

stand for defendant, Mr. Restein stated that, since
March, 1909, his company had "manufactured and sold"
the round hole packing, under the rights assigned by
Miller, and still continues to make some of it. Because
of this admission, and those of like character in defend-
ant's pleading, it was not necessary to place before the
jury an issue of fact as to whether or not the latter had
made sales of the patented article of which plaintiff
claimed an accounting, and counsel for defendant evi-
dently so thought at time of trial, or no doubt he would
have called the court's attention to the omission now
suggested; this he failed to do, and for that reason can-
not here complain.

Restein also testified that, in matters connected with
plaintiff's inventions, patented and assigned to defend-
ant, both he and Miller worked thereon "for the benefit
of the company," adding, "not for me, it was for the
company"; and, on plaintiff's evidence, equally with
that of defendant, no question was left open about Mil-
ler being the inventor of the patented articles.

It likewise clearly appeared, without any real contro-
versy in the testimony, that plaintiff was employed as a
salesman, and the invention in controversy was con-
ceived and made by him before entering the service of
defendant. This being the case, even if defendant's
pleadings were sufficient to raise the point—which is
doubtful—there is, in view of the evidence, no room to
contend (as the affidavit of defense and appellant's argu-
ment suggest) that the patent for the round hole packing
belonged to defendant because plaintiff conceived and
worked thereon during the hours of his employment by
the former. So far as the alleged royalty contract
is concerned, defendant is subject to the rule that
one who accepts and continues to take and retain
the benefits of an agreement, cannot be heard to
deny the authority of the agent who acted for it in
the making thereof; and the court below did not err in
thus charging. Moreover, since defendant corporation

was chartered for the manufacture of packings, and, under the by-laws thereof, its president is expressly given "entire charge of the general business of the company, as authorized by its charter," these internal regulations stating that, "except as herein limited," he "shall conduct said business according to his best judgment," there was no real issue for the jury on the question of the authority of Restein to make the alleged royalty contract; nor, in view of defendant's own evidence, was it controverted that the dealings in relation to plaintiff's inventions were with the corporation, rather than with Restein individually, as suggested by appellant. In fact, however, the questions of Restein's authority to act, and whether or not he contracted for his company, were submitted to the jury.

While Miller's testimony relative to the actual making of the royalty agreement was most brief, yet we cannot say, as a matter of law, it was inadequate. Since two juries have passed upon this evidence, each deciding in plaintiff's favor, and a court has sustained the last verdict, the conclusions of fact which it comprehends will not be disturbed; no useful purpose would be served by discussing the proofs in detail, or the alleged differences between them and plaintiff's averments.

If a variance exists, defendant, having failed to raise the point at the proper time in the court below, is not now in a position to insist upon it (Krœgher v. McConway, 149 Pa. 444, 458), but, after reading the pleadings and evidence, we are not convinced of a material disagreement between the two; nor, on consideration of the proofs, do we feel that the trial judge was obliged to place before the jury any issue other than the one on which the case, as tried, really turned, namely, whether or not defendant promised to pay plaintiff the royalty of three cents a pound for the packing sold by it under the round hole patent, the rights in which were subsequently assigned by Miller to the alleged promisor; because, if that bargain was made, the obligation to pay

the royalty, in the absence of a contractual stipulation to the contrary (which is not claimed), would subsist so long as defendant continued to sell the patented article. Of course, under these circumstances, after a reasonable time, and on demand, defendant would be bound to account to plaintiff for the sales made by it; and, all relevant facts being undisputed, the reasonableness of the time would be for the court.

The fact of the contractual promise to pay a set royalty was found by the jury for plaintiff, in face of defendant's flat denial of any such undertaking; and, since there was no pretense by the latter of either an accounting or payment, the raising of these issues would have been entirely inconsistent with its general position at trial, as likewise is the suggestion of them now. On the finding in plaintiff's favor, he was at least entitled to an accounting, which is all the court below directed; and, if his proceedings in that tribunal were legally right in substance and form (points we shall take up in considering the second branch of this case), the order appealed from should stand.

On the branch of the case with which we have thus far dealt, only two additional matters need be mentioned. Appellant suggests the statute of limitations as a bar to plaintiff's claim, but the record shows it did not interpose that defense either before or at trial, nor is the point now raised by any specific assignment of error; for the reasons just stated, no more need be said on this subject—although, it may not be out of place to add, we are far from persuaded the statute could properly be held applicable to the issues on trial: Adam's App., 113 Pa. 449, 458. Finally, since plaintiff's suit rests upon an alleged oral contract, the authorities cited by defendant, illustrative of the principle that a written agreement may not be varied by parol evidence, have no relevancy; but, if they had, the mention of "one dollar," in the assignment of the round hole patent rights, would not prevent plaintiff from showing the real consideration in-

volved, it being consistent with that expressed: Watterson v. Allegheny Val. Ry., 74 Pa. 208, 216; McGarry v. McDermott, 207 Pa. 620, 623; Henry v. Zurflieh, 203 Pa. 440, 445. These deliberations bring us to the second branch of the case, which involves questions of a different character.

Defendant, having asked and been refused binding instructions in its favor, moved for a new trial and judgment n. o. v. which were declined thus: "Rule [for new trial] discharged" and "motion [for judgment n. o. v.] refused." Defendant now contends these orders do not comply with the requirement of the Act of April 22, 1905, P. L. 286, that "it shall be the duty of the court, if it does not grant a new trial, to......enter such judgment as should have been entered upon the evidence." We pass the question of the appositeness of the act and assume the point sought to be raised as properly before us; but, even then, appellant's contention cannot be sustained, for, after disposing of the rule and motion as just stated, the court below made an order requiring defendant "to account to plaintiff for all sales of piston rod packings manufactured and sold by it since January 19, 1910, under the "round hole" patent; which, considering the pleadings, with the admissions made and issues determined, we feel was an appropriate judgment to follow the verdict in the present case.

Appellant argues, however, that the Practice Act of 1915, P. L. 483, "makes no provision and confers no authority upon the court to enter an order for an account, except upon judgment entered by default for want of an affidavit of defense, or for want of a sufficient affidavit of defense"; and that this measure of relief is provided by section 19, which is inapplicable to the circumstances at bar. The point just stated is quite correct, so far as the express provisions of the act are concerned; for the only section directly relevant to the facts here involved is the eleventh, which simply provides: "If plaintiff avers that defendant has received money......for which

he is bound to account to plaintiff, or if plaintiff is unable to state the exact amount due him by defendant, by reason of defendant's failure to account to him, plaintiff may ask for an account." The statute fails expressly to give any further remedy in the premises; but, conceding its bad draftsmanship in this regard, that does not render the legislation inoperative, if its serviceable parts are susceptible of use. Here, again, however, it is contended that all of the sections under discussion go beyond what is reasonably indicated in the title of the statute, thereby breaching section 3, article III, of the Constitution of Pennsylvania and making the provisions in question completely void.

Thus it may be seen defendant would have us declare the sections to which it calls attention either entirely inoperative, on the ground of their practical ineffectiveness, or absolutely void, because of basic invalidity, owing to alleged lack of adequate title notice; but we have no power to set aside any part of a statute, be it a practice act or one dealing purely with substantive law, unless the conclusion that it is either unworkable or unconstitutional is inevitable (Minsinger v. Rau, 236 Pa. 327, 331) and the necessity for so declaring inescapable: Mesta Machine Co. v. Dunbar Furnace Co., 250 Pa. 472, 476. Even then, the court, in reality, only judicially ascertains that certain apparent imperfections in the legislation under attack do in fact exist; and, when these faults are thus determined, if fundamental—in that they demonstrate either the impossibility of the statute's operation or its actual conflict with the organic law—the act falls of its own weight, the judicial pronouncement of invalidity simply serving as formal, binding, general notice to that effect. This most excellent constitutional system will continue to command public confidence only so long as those charged with its administration sedulously guard themselves against abuse of power, by never pronouncing legislation inoperative or void unless no other possible course is open to

them; fortunately this court is not now faced with that dilemma, as we shall proceed to point out.

Where a statute is "so vague, indefinite and uncertain that the courts are unable to determine, with any reasonable degree of certainty, what the legislature intended, or is so incomplete or conflicting and inconsistent in its provisions that it cannot be executed, it will be declared inoperative......; but legislation should not be held invalid on the ground of uncertainty, if susceptible of any reasonable construction that will support and give it effect": 25 R. C. L. 810, and cases there cited. An act will not be declared inoperative and ineffectual on the ground that it furnishes no adequate means to secure the purpose for which it is passed, if common sense and reason can devise and provide the means, and all the instrumentalities necessary for its execution are within the reach of those intrusted therewith: Com. v. Moir, 199 Pa. 534, 544.

Let us see to what extent the principles thus far stated may or should be applied on this appeal; which brings us back to a direct consideration of the Practice Act.

The legislation before us is entitled: "An Act relating to practice in the courts of common pleas in actions of assumpsit and trespass......; prescribing the pleadings and procedure to be observed therein, and giving the courts power to enforce its provisions." Appellant contends "the words 'action of assumpsit' in this title must be given the meaning they had at the passage of the act, and, as at that time actions for accounting were not included in assumpsit, such actions for accounting could not be included in or referred to by the words 'action of assumpsit' in the present title."

The statute is a remedial practice act, and its title in effect so proclaims. The words "pleadings, procedure and practice," with their context, as found in this title, are sufficiently comprehensive to include provisions (like section 11) which expressly allow, or make relevant, certain kinds of issues; therefore it cannot be said

the act departs from its indicated purpose when it enlarges the pleadings, procedure and practice prevailing in assumpsit, thereby permitting the plaintiff to aver and prove facts which, if found to be true, entitle him to an accounting from defendant; particularly is this so in a case like the present, where the account asked for is one-sided, and where plaintiff has a legal and equitable right to discovery.

The title contains sufficient notice of the section here involved, and we cannot agree it was beyond the power of the legislature to engraft the remedy there given upon assumpsit: see Act of May 25, 1887, P. L. 271, where, under a much less liberal title, several other theretofore separate forms of action are combined in assumpsit. Defendant's statement, that the provision in question is "repugnant" to the action of assumpsit, is true only in the sense that heretofore assumpsit and accounting—as such—have not been associated in the manner now provided; but there is no inherent repugnancy. Furthermore, we do not feel that section 11 is rendered invalid, as appellant contends, by reason of the fact that defendant, as to a counterclaim or set-off on his part, is afforded no similar right to ask for an accounting (see section 14); if this is an incongruity, the legislature can remedy it.

True, the statute gives no express power to decree an accounting, after verdict for plaintiff on issues of fact raised to determine whether he is entitled to that relief; but neither does it set out what steps are to follow the verdict in an action on a book-account or promissory note. No one, however, would question the power of the courts to enter and enforce appropriate judgments in the latter instances. While, in each case, the procedure is provided only up to the issue, yet the act, in terms, confers upon plaintiffs the right to ask for an accounting in actions of assumpsit, where they aver a legal obligation of defendant to account to them and properly plead their inability to state the amount of the indebtedness

in suit. It follows therefore that such issues as the act expressly gives a plaintiff the right to raise must be submitted to the jury, as a matter of course; but what order, judgment or decree shall be entered on the verdict, the statute does not undertake to say. Where, as in the present case, the verdict comprehends a finding that defendant is contractually bound to pay plaintiff a designated royalty on sales of articles made and disposed of by the former, and the record furnishes a date from which to begin an accounting, it may well be, as appellee suggests, that the trial court has implied power to enforce defendant's legal obligation by administering equitable relief, in order to obtain the account, and, if necessary, to adjudicate the matters involved, by audit, to final judgment or decree; but we leave that question undecided, for it is not now before us.

Trial by jury, according to common law forms, has long been employed as an adjunct or auxiliary to proceedings in equity, and there is no inherent reason why —if so intended by the legislature (whether such is the purpose of the present act we do not now decide)— fit equitable remedies should not be used in proceedings instituted under common law forms (as an instance of this, see section 9, Act of May 29, 1901, P. L. 327, 331, where, in a criminal prosecution, the quarter sessions is authorized to issue injunctions; see also Paterson's Case, 253 U. S. 300) ; but, as already indicated, none of these questions are ripe for decision on this record. In our opinion, entirely aside from the Practice Act of 1915, the present pleadings are amply sufficient to support an action of account render: Brewster's C. P. Practice 237, sec. 317. In substance, the decree entered is nothing more nor less than a judgment of quod computet, and can be so treated.

The parts of the Practice Act with which we are dealing appear as clumsily expressed efforts to assimilate account render and assumpsit, but section 23 confers on the courts the right to make rules for the "proper en-

forcement" of the statute; possibly it was the legislative intention that the courts, by such rules, should provide for and regulate the audit of accounts and the entry of final judgments thereon.  Whether this is true, and how far the act has succeeded in that direction, can be decided, if and when an unmistakable attempt is made to proceed to audit and judgment thereunder.  In the meantime, on the record as it stands, we shall treat the order appealed from as equivalent to a judgment of quod computet, in accord with section 18 of the Act of 1840, P. L. (1841) 1, 7, which, being in no wise inconsistent with the Act of 1915, is still extant.

It may be noted that defendant made no attack, either in its affidavit of defense or at time of trial, on the form of the action—only after verdict and judgment in plaintiff's favor, did it, by petition in support of a rule to vacate the decree ordering an account, raise the questions which we have touched upon; but no more need be said as to this, for, as indicated in the next paragraph, defendant's appeal must be dismissed.

We have dealt with the several questions so ably argued by counsel on each side, not only to shed thereon the light their presentation at this time warrants, but also in order systematically to bring our consideration of the case to the point finally reached, and just stated; as before said, however, this court is not now in a position to determine most of these questions, and will not do so until they are brought up on appeal after final judgment.  In our view it, the present action, being avowedly commenced at common law, is not within the Act of June 24, 1895, P. L. 243, giving the right to an appeal from a decree in equity for an accounting; and the order before us, being in the nature of a judgment of quod computet, is interlocutory and nonappealable; see per curiam opinion by President Judge RICE in Hall v. Haines, 38 Pa. Superior Ct. 517, 518, and cases cited in 1 Brewster's C. P. Practice 247, sec. 341.

The appeal is dismissed.