## Commonwealth v. McDonald

*Mark Gearhart,* for Commonwealth.

*Dean L. Foote,* for defendant.

KOCH, J., April 6, 1959.—The prosecutor, a member of the Pennsylvania State Police, swore to an information charging defendant, Terry MacDonald, with violating subsection (*a*) of The Vehicle Code of May 1, 1929, P. L. 905, art. VIII, sec. 819, as amended by the Act of March 15, 1956, P. L. (1955) 1273, sec. 1, 75 PS §406, which is as follows:

"(a) No person shall operate a motor vehicle, except fire department and fire patrol apparatus, on a highway unless such motor vehicle is equipped with a

muffler, in good working order, and in constant operation to prevent excessive or unusual noise."

Defendant waived a hearing before an alderman of the City of Allentown and the matter was heard before us. At the conclusion of the Commonwealth's testimony, defendant demurred to the evidence. Upon overruling the demurrer, no testimony by defendant or any one in his behalf was offered. We reserved a decision on the matter to enable defendant to argue the various contentions which he advanced at the hearing.

The facts are that at approximately 10:05 p.m. on June 3, 1957, the arresting officer and a member of the Allentown Police Department stopped defendant, who was driving a 1954 or 1955 Buick, at 17th and Hamilton Streets, Allentown, which is in a semi-residential neighborhood. The testimony indicates that while defendant's vehicle was in motion, the officers concluded that the Buick "had a loud muffler, that made a very loud and excessive noise." After stopping the car, Officer McGroarty, the State policeman, depressed the accelerator of the MacDonald vehicle and determined that the noise emanating from the car was of equal volume to that detected when it was in motion and concluded that defendant was in violation of the above provision of The Vehicle Code.

Both of the officers testified that no inspection of the muffler of the car was made and of course defendant was not charged with a violation of subsection (b) regarding muffler cut-outs or by-passes, or subsection (c) which provides as follows:

"(c) No person shall operate a motor vehicle on any highway (1) equipped with a muffler from which the baffles plates, screens or other original internal parts have been removed and not replaced; or (2) equipped with an exhaust system which has been modified in a manner which will amplify or increase the noise emitted by the motor of such vehicle above that emitted

by the muffler originally installed on the vehicle": 75 PS §406.

The officers were faced with a detailed cross-examination on the difficult matter of explaining their conclusion that the vehicle emanated "excessive or unusual noise." After explaining their extensive experience with regard to the operation of motor vehicles, they indicated that the basis upon which the arrest was made was that the car caused exhaust noises considerably in excess of other Buick cars of the same class.

Defendant maintains that since the arresting officers made no physical inspection of the muffler of the vehicle, he cannot be found guilty. More specifically, he contends that since such an inspection was not made, we cannot conclude that the muffler was *not* in good working order and there can be no conviction under subsection (*a*) even though we determine the presence of excessive or unusual noises.

We find no difficulty in finding as a fact that the noises coming from the vehicle were "excessive" or "unusual." Recourse to the American College Dictionary indicates that the term "excessive" means "exceeding the usual or proper limit or degree; characterized by excess." The adjective "unusual" is defined as "not usual, common, or ordinary; uncommon in amount or degree; of an exceptional kind." Nothing in the testimony persuades us that the noises as described by the officers came from a source other than the muffler. We cannot conceive that the legislature intended that those charged with enforcement of The Vehicle Code would be obliged to disassemble the muffler in order to determine that which the ear alone can clearly detect. It is, consequently, a reasonable inference that if there are in fact excessive or unusual noises caused by the exhaust, that a muffler is not in good working order.

We are of the opinion that the legislature in subsection (a) intended to prevent the use of mufflers which would in any way cause excessive or unusual noises. The purposes of subsection (b) and (c) are obviously to spell out in detail the prohibited uses of cut-outs, by-passes, the removal of certain internal parts of mufflers and the modification of exhaust systems. Subsection (a) was undoubtedly designed to protect the public from the muffler which has become disintegrated by rust or other causes as well as the ingenuity of the hot rodder who can devise means to adjust mufflers by methods not covered in subsections (b) and (c) so as to loudly proclaim his presence upon the highways of the Commonwealth. The only logical conclusion that can be reached is that subsection (a) requires a muffler in such condition as *to prevent* excessive or unusual noises.

Little need be said with respect to the objective of the statutory provision. As early as 1919 the legislature recognized that the blatant sounds resulting from the use of internal combustion engines in motor vehicles were a factor which required regulation to protect the public. The Act of June 30, 1919, P. L. 678, sec. 24, repealed by the Act of May 11, 1927, P. L. 886, which was repealed by The Vehicle Code, provided as follows:

"No motor vehicle of any description shall be used or operated on the public highways unless the engine be muffled *so that the explosions thereof shall not constitute a nuisance to the public;* and no muffler cut-out shall be used on any public highway in any city, borough, or incorporated town." (Italics supplied.)

Defendant suggests that we must strike down the legislative provision on the principle that it is vague, indefinite and uncertain as expressed by the Supreme Court in Willcox v. Penn Mutual Life Insurance Co., 357 Pa. 581, which declared the community property law, Act of July 7, 1947, P. L. 1423, invalid. In that

decision, however, the court cited Miller v. Belmont Packing & Rubber Co., 268 Pa. 51, 63, which stated the principle as follows:

"Where a statute is 'so vague, indefinite and uncertain that the courts are unable to determine, with any reasonable degree of certainty, what the legislature intended, or is so incomplete or conflicting and inconsistent in its provisions that it cannot be executed, it will be declared inoperative . . .; but legislation should not be held invalid on the ground of uncertainty if susceptible of any reasonable construction that will support and give it effect': 25 R. C. L. 810, and cases there cited. An act will not be declared inoperative and ineffectual on the ground that it furnishes no adequate means to secure the purpose for which it is passed, if common sense and reason can devise and provide the means, and all the instrumentalities necessary for its execution are within the reach of those intrusted therewith: Com. v. Moir, 199 Pa. 534, 544."

We need not go beyond the code itself to find other language which is not susceptible of scientific measurement. For example, in article VIII, sec. 817, of The Vehicle Code of May 1, 1929, P. L. 905, 75 PS §404, the public is protected against obscene or vulgar signs or markings on vehicles. The terms "obscene" and "vulgar" are not defined in the legislation but it is obvious that the question of reason and good judgment enter the picture and it is the problem of the fact-finder to determine whether the expected standards have been met. Similarly, the words "excessive" or "unusual" must be subject to this principle. We are convinced that the guide used by the officers, the comparison to similar Buicks, was a fair and reasonable standard.

Defendant contends that if we find him guilty of the offense, as we do, that we are not empowered to

impose costs as part of the sentence. The penalty provision is silent as to costs. However, there are two legislative enactments which must be invoked. The first is the Minor Judiciary Fee Bill of January 7, 1952, P. L. (1951) 1841, sec. 2(*a*) (2), 42 PS §217, which permits the minor judiciary to charge a fee of $5 in summary conviction motor vehicle cases. The other statute is The Vehicle Code of May 1, 1929, P. L. 905, art. XII, sec. 1204(*c*), as amended, 75 PS §734, which provides for waived hearings under The Vehicle Code. This provision is as follows:

"(c) If any person, so accused, having waived a hearing, or having appealed from a summary conviction under this act, shall be convicted in such court of the offense charged, he shall be sentenced to pay the fine and costs of prosecution, or suffer imprisonment provided in this act for the offense committed."

*Decision and Order*

Now, April 6, 1959, defendant is found guilty of violating subsection (*a*) of The Vehicle Code of May 1, 1929, P. L. 905, art. VIII, sec. 819, as amended, and is directed to appear in courtroom 1 of the Lehigh County Court House for sentence on April 14, 1959, at 9:30 a.m.