## Pittsburgh Appeal.

Argued March 23, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Frederick A. Boehm,* First Assistant City Solicitor, with him *Eugene B. Strassburger, III,* Assistant City *Solicitor,* and *Ralph Lynch, Jr.,* City Solicitor, for appellants.

*Seymour J. Schafer,* with him *Markel, Markel, Levenson & Schafer,* for appellees.

OPINION BY MR. JUSTICE ROBERTS, July 2, 1970:

On December 28, 1968, the City of Pittsburgh enacted "The Institution and Service Privilege Tax Ordinance" which, in essence, sought to levy a six mills tax

on the gross receipts[1] of any institution[2] engaging in any service[3] in the City. Twenty-eight institutions performing health-related services then challenged the ordinance in the Court of Common Pleas of Allegheny County, as set forth in The Local Tax Enabling Act, Act of December 31, 1965, P.L. 1257, §6, 53 P.S. §6906 (Supp. 1970). In an effort to expedite the proceedings the parties agreed to select Allegheny General Hospital, Shadyside Hospital and the Hospital Council of Western Pennsylvania to proceed to hearing. The court, after hearing testimony and argument, held that the ordinance was invalid and unenforceable as against the three petitioners and all other institutions of purely public charity. The City has appealed and we affirm.[4]

Article IX, §1, of the Constitution of 1874, now Article VIII, §2, provides: "The General Assembly may by law exempt from taxation: . . . (v) Institutions of purely public charity . . ." The Act of May 22, 1933, P.L. 853, art. II, §204, as amended, 72 P.S. §5020-204, provides: "The following property shall be exempt from all . . . city . . . tax, to wit: . . . (c) All hospitals . . .

---

[1]"Gross receipts" was defined so as to exclude receipts subject to the general Mercantile License Tax, the Business Privilege Tax, or the Earned Income Tax.

[2]"Institution" was defined as "any organization, corporation, unincorporated association or any other entity, including but not limited to, hospitals, nursing homes, colleges, universities, schools other than elementary and secondary schools, cemeteries, veterans posts and recreational centers and all other organizations, which provide service to the general public."

[3]"Service" was defined as "carrying on or exercising within the City of Pittsburgh medical, educational, social, recreational, vocational, or any other type of service for which a charge is collected." Not included are services given free and without fee to the general public.

[4]In view of our disposition today we do not pass on the hospitals' claims that the tax violates the uniformity clause and is so vague as to be unenforceable.

and institutions of . . . charity. . . ." The hearing court found that the petitioning hospitals were institutions of purely public charity, a conclusion the City no longer disputes, and hence were exempt from the tax by virtue of the above provisions. We agree.

In *Allegheny County v. Moon Township,* 436 Pa. 54, 258 A. 2d 630 (1969), we recently construed the above provisions with respect to "public property used for public purposes." See Act of 1933, supra, 72 P.S. §5020-204 (g). We there held that when property is found to be "public property used for public purposes" the Act of 1933 exempts it from all taxes, regardless of their labels: "Neither the constitution, nor the statute, say the exemption will be only for property taxes; the statute, in fact, expressly says 'all tax'. The word 'property' is used merely to describe the locus of what the Legislature was exempting, not the type of tax it was exempting it from. There is no reason to assume that the Legislature did not fully exercise its constitutional power to exempt this property, not only from property taxes, but also from taxes on activities conducted on the property." *Moon Township,* 436 Pa. at 56, 258 A. 2d at 632.

Thus it is clear that under the Act of 1933 the charitable hospitals in the instant case, like the "public property used for public purposes" in *Moon Township,* are exempt from the tax sought to be imposed. Nevertheless, the City argues that the Legislature has given it the power to tax institutions of purely public charity by virtue of The Local Tax Enabling Act, supra, 53 P.S. §§6902, 6903 (Supp. 1970), which provides: "[C]ities of the second class . . . may, in their discretion, . . . levy, assess and collect . . . such taxes as they shall determine on persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivisions. . . ." ". . . It

is the intention of this section to confer upon such political subdivisions the power to levy, assess and collect taxes upon any and all subjects of taxation, . . . which the Commonwealth has power to tax but which it does not tax or license. . . ."

The City argues that since The Local Tax Enabling Act intended to give to the City the same power to tax as the Commonwealth has, and since the Act of 1933 does not exempt charitable institutions from Commonwealth taxation, the City must therefore have the power to tax such institutions. We cannot agree. The policy of exempting charities from taxation is an old one in this Commonwealth. If the Legislature had intended to now allow many governmental units[5] to tax charities, we believe that it would have acted in a more direct fashion and explicitly repealed all or part of the Act of 1933. Indeed, we have long held that broad taxing statutes do not cover charities unless the Legislature specifically so states.[6] Thus we might simply repeat what this Court stated in 1891 in response to an almost identical argument over the power to tax charitable institutions: "When the legislature of Pennsylvania, turning its back upon all the previous history of the state, shall deliberately resolve to recruit the finances of the commonwealth by a raid upon the treasuries of all the charities within its limits, by seizing money which has been devoted . . . to the relief of the distressed, they will doubtless do it at any rate in an open and manly way, and not by the use of doubtful phrases or ambiguous and concealed meanings." *General As-*

---

[5] The Local Tax Enabling Act applies not only to cities of the second class, but also to cities of the second class A, cities of the third class, boroughs, towns, townships of the first class, townships of the second class, school districts of the second class, school districts of the third class, and school districts of the fourth class.

[6] See, e.g., *Buhl's Estate,* 300 Pa. 29, 150 Atl. 86 (1930); *Mattern v. Canevin,* 213 Pa. 588, 63 Atl. 131 (1906).

*sembly v. Gratz,* 139 Pa. 497, 508, 20 Atl. 1041, 1044 (1891).[7]

The order of the Court of Common Pleas, Civil Division, of Allegheny County, invalidating "The Institution and Service Privilege Tax Ordinance," is affirmed.

Mr. Justice JONES and Mr. Justice POMEROY concur the result.

DISSENTING OPINION BY MR. JUSTICE COHEN:

The majority concludes that the Pittsburgh "Institution and Service Privilege Tax Ordinance" is invalid because the grant of taxing power in The Local Tax Enabling Act, Act of December 31, 1965, P.L. 1257, §§2 and 3, 53 P.S. §§6902 and 6903 (Supp. 1970), is subject to the restriction contained in The General County Assessment Law, Act of May 22, 1933, P.L. 853, art. II, §204, as amended, 72 P.S. §5020-204(c), that hospitals and institutions of charity shall be exempt from all city tax. They state that if the legislature had intended to abandon the policy contained in The General County Assessment Law it would have done so explicitly.

Even though §204(c) of The General County Assessment Law is not specifically mentioned in the repealer section of The Local Tax Enabling Act, supra, §23, 53 P.S. §6923 (Supp. 1970), I believe that the legislature's language in The Local Tax Enabling Act makes its grant of power clear. Section 2 states: "Cities of the

---

[7]We note that The Local Tax Enabling Act specifically forbids taxing membership in golf clubs, see 53 P.S. §6902(7). Compare *General Assembly v. Gratz,* 139 Pa. at 506, 20 Atl. at 1043-44: "Are we to suppose that, by such language . . ., the legislature intended to tax every purely public charity . . . every hospital and every refuge and home for the afflicted and the suffering, and yet exempted from the tax all 'building and loan associations' as the same section does"?

second class . . . may, in their discretion, . . . levy, assess and collect . . . such taxes as they shall determine on persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivisions. . . ." Section 3 states: ". . . It is the intention of this section to confer upon such political subdivisions the power to levy, assess and collect taxes upon any and all subjects of taxation, . . . which the Commonwealth has power to tax but which it does not tax or license. . . ." It is difficult to imagine a situation in which the legislature has made its intention clearer. The subdivision is to have the power to tax anything the Commonwealth has power to tax but which it does not tax or license. As the Commonwealth could have enacted this legislation and as it had not done so, the City of Pittsburgh had the authority to proceed as it did.

In addition, there is no general rule that the only acts overruled by subsequent legislation are those that are specifically mentioned. Section 23 of The Local Tax Enabling Act states, "All other acts and parts of acts are repealed insofar as they are inconsistent herewith." There is no question that the broad grant of taxing power contained in that act is inconsistent with the limitation contained in The General County Assessment Law, and I see no reason why a specific repealer is necessary when the legislature in section 3 has made its intention clear. Also, section 91 of the Statutory Construction Act, Act of May 28, 1937, P.L. 1019, art. VII, 46 P.S. §591, states, "Whenever a law purports to be a revision of all laws upon a particular subject, or sets up a general or exclusive system covering the entire subject matter of a former law and is intended as a substitute for such former law, such law shall be construed to repeal *all former laws upon the same subject.*" (Emphasis supplied). *Werner v. King,* 310 Pa. 120, 124, 164 Atl. 918 (1933). The Local Tax En-

302

abling Act was clearly intended to repeal the Act of June 25, 1947, P.L. 1145 and to revise the law on this entire subject. Therefore, section 204c of The General County Assessment Law must be deemed repealed.

Finally, section 2(7) of The Local Tax Enabling Act specifically dictates that municipalities shall not have authority "To levy, assess or collect a tax on membership in or membership dues, fees or assessment of charitable . . . organizations. . . ." If the legislature did not intend to grant the municipality the power to tax religious and charitable organizations, it would not have been necessary to exempt the membership dues of such organizations from the permissible scope of the tax. "The legislature is presumed not 'to have intended its laws to contain surplusage." *Lynch v. Owen J. Roberts School District,* 430 Pa. 461, 469, 244 A. 2d 1 (1968).

I fear that the majority is just expressing its feelings on the wisdom of this ordinance and in doing so is ignoring sound principles of law.

I dissent.