## University Club v. City of Pittsburgh

*Ralph H. German,* for plaintiff.

*Frederick Boehm,* Assistant City Solicitor, for defendant.

SILVESTRI, J., February 10, 1972.—This case is before the court upon the complaint in assumpsit of the University Club (hereinafter referred to as uni-

versity) and the Duquesne Club (hereinafter referred to as Duquesne) seeking refund of taxes paid under protest[1] pursuant to "The Institution and Service Privilege Tax Ordinance",[2] (hereinafter referred to as ordinance) of the City of Pittsburgh (hereinafter referred to as Pittsburgh).

University and Duquesne are duly organized non-profit corporations organized for the purpose, inter alia, of the social enjoyment of its members. Both clubs have facilities providing food, beverage, rooms, valet, games and other incidental conveniences. A charge is made for the use of the facilities and the facilities are available only to the members and their guests. The major portion of the income of both clubs is from providing food, drink and refreshments.[3]

Pursuant to The Local Tax Enabling Act of Dec. 31, 1965, P. L. 1257, §1 et seq., 53 PS §6901, et seq. (hereinafter referred to as Enabling Act), Pittsburgh enacted ordinance no. 676 approved December 28, 1968, effective February 1, 1969, as amended by ordinance no. 592 approved December 28, 1970, effective January 1,

---

[1] University paid taxes as follows: 1968, $5,860.50; 1969, $6,-626.59; 1970, $6,507.55 for a total of $18,994.64. Duquesne paid taxes as follows: 1968, $12,500; 1969, $14,263.06; 1970, $14,513.28 for a total of $41,276.34.

[2] The ordinance provides under section 11.

"Payment under Protest—Refunds:

"The City Treasurer is hereby authorized to accept payment under protest of the amount of the Institution and Service Privilege Tax claimed by the City in any case where the taxpayer disputes the validity or amount of the City's claim for tax. If it is thereafter judicially determined by a court of competent jurisdiction that the City has been overpaid, the amount of the overpayment shall be refunded to the taxpayer. All refunds shall be made in conformance with the procedure prescribed in Ordinance No. 162, approved May 9, 1962."

[3] Appendix A.

1971, entitled "The Institution and Service Privilege Tax Ordinance."

The ordinance imposes a tax of six mills on each dollar of volume of the gross annual receipts on every person or institution or persons engaging in any institutional or nonprofit service in Pittsburgh.[4]

Plaintiffs assert that they are entitled to a refund of taxes paid for the following reasons:

1. The ordinance attempts to tax "fees" collected by plaintiffs from their members which is prohibited by the Enabling Act.

2. That the ordinance by virtue of the case of Appeal of Hosp. Council of West Pa., 118 Pitts. L.J. 5 (1969); affirmed Pittsburgh Appeal, 439 Pa. 295, 266 A. 2d 619 (1970) and the case of Pittsburgh Catholic Publishing Associates v. City of Pittsburgh, January term, 1971, 2116, presently on appeal, has been emasculated to the extent that it is not a workable piece of legislation.

3. The enabling act limits the taxing power of city to a maximum of two mills on "proprietors of restaurants or other places where food, drink and refreshments are served" whereas the ordinance imposes a tax of six mills.

4. The ordinance is vague and indefinite as to be unenforceable and therefore unconstitutional.

---

[4] Section 3 of ordinance 676:

"Imposition and Rate of Tax: Every person or Institution engaging in any service in the City of Pittsburgh beginning with the tax year 1969 and annually thereafter, shall pay an annual tax at the rate of six (6) mills on each dollar of volume of the gross annual receipts."

Section 3 of ordinance 592:

"Imposition and Rate of Tax: Every person engaging in any institutional or nonprofit service in the City of Pittsburgh beginning with the tax year 1971 and annually thereafter, shall pay an annual tax at the rate of six (6) mills on each dollar of volume of the gross annual receipts."

## I.

Does the ordinance tax "membership fees" contrary to the prohibition of the enabling act?

The enabling Act, section 2, as amended provides:

". . . Such local authorities shall not have authority by virtue of this act: . . .

"(7) To levy, assess or collect a tax on membership in or membership dues, fees or assessment of . . . nonprofit organizations including but not limited to sportsmens, recreational, golf and tennis clubs, girl and boy scout troops and councils;"

Plaintiffs are such organizations falling within the proscription of the enabling act prohibiting a tax on "membership in or membership dues, fees or assessments."

Plaintiffs contend that the consideration paid by its members for food, drinks, refreshments, rooms, valet and the use of other facilities and conveniences provided by the plaintiffs are "fees" and, therefore, cannot be taxed by Pittsburgh under the enabling act.

Dues, fees and assessments are charges made by an organization for the organization for the privilege of being a member of such organization: White v. Winchester Country Club, 315 U. S. 32 (1941). Such dues, fees or assessments are made generally once a year in an amount applicable at the same rate to all members of the same class for the privilege of continuing membership: Merion Cricket Club v. U. S., 315 U. S. 42 (1941); and York Township v. Red Lion Country Club, 35 D. & C. 2d 517 (1965). The payment of the dues, fees or assessment, generally entitle the member the right of access to and the right to the use of the organization's facilities. If the facilities available for the use of the members are not used by the member, the dues, fees or assessment is still payable to insure continued membership. It is common knowledge that charges are

made by organizations such as the plaintiffs, for the facilities which plaintiffs provide for its members. The member can control the total amount of his expenditures for the facilities available for his use by the amount of use he makes of the facilities, whereas the dues, fees or assessment is constant and applies equally to all members of the same class and is generally controlled by the bylaws.

In Duquesne Club v. Pittsburgh, 170 Pa. Superior Ct. 426, 87 A. 2d 81 (1952), the court, in determining that Duquesne was not subject to the Pittsburgh mercantile license tax ordinance, referred to the food and beverage receipts not as dues, fees or assessment, but rather as charges for services rendered. The Superior Court made an implicit distinction between "charges" and "dues" at page 428, where Judge Hirt said:

"The *charge* for food, . . . would result in a loss if . . . the loss [was not] absorbed by the *dues* paid by members. . . ."

The prohibition of enabling act refers to ". . . membership in or membership dues, fees or assessment . . ." Giving effect to every phrase or word in a statute as we must do (Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 51, 46 PS §551), the word "membership" preceding "dues, fees or assessment" modifies the latter and can only apply to the cost of membership.

The University Club v. Pittsburgh, 440 Pa. 562, 271 A. 2d 221 (1970) wherein university contended that it was not subject to the Pittsburgh parking tax ordinance by reason of the fact that it was not a commercial parking lot within the meaning of the ordinance, the court by Justice Eagan after noting that university assessed each member a flat rate of 85 cents everytime a member used the club parking lot which "fee" was not immediately collected, stated at page 565:

"The act conferred upon political subdivisions the

power to levy taxes upon all subjects of taxation which the Commonwealth has the power to tax but which it has not so exercised. Section 2(7) of the 1965 act contains the only restriction on taxing private social organizations: 'Such local authorities shall not have authority by virtue of this act: (7) to levy, assess or collect a tax on membership in or membership dues, fees or assessment of charitable, religious, beneficial or non-profit organizations. . . .'

"Since parking transactions for which a consideration is paid are nowhere mentioned in the exception, it is a reasonable assumption that they are proper subjects of taxation."

The court further stated, at 440 Pa. 568:

"There is no reason in public policy why special treatment should be accorded to private social clubs in matters like the one before us."

Using the same rationale and since use of the facilities of a private club for which a consideration is paid are nowhere mentioned in the exception of the enabling act, they then are proper subjects of taxation.

Accordingly, we hold that the ordinance in imposing a tax on the gross receipts of plaintiffs is not a tax on membership dues, fees or assessment in violation of section 2(7) of the enabling act.

## II.

Is the ordinance an unworkable piece of legislation by reason of the decisions in the Pittsburgh Appeal and Pittsburgh Catholic Publishing Association cases?

Plaintiffs contend that by reason of the Pittsburgh Appeal, supra, which held that the ordinance did not apply to any entity of a purely public charity that the ordinance is not a workable piece of legislation and therefore unenforceable and invalid.

Plaintiffs ignore the fact that the court in the Pittsburgh Appeal, supra, choose not to pass on the constitutionality of the ordinance. As of this moment, the ordinance is valid, no part of it has been determined to be invalid and it remains totally intact. All that was decided in the Pittsburgh Appeal, supra, is that certain organizations by reason of their being public charities were not subject to the tax provided for in the ordinance.

It is true as plaintiffs argue, without citing the authorities in detail, that the case law and the Statutory Construction Act provide that whenever a part of a statute is found to be constitutionally invalid and can be severed from the rest of the statute without destroying its entirety of thought, the question of whether the statute in its remaining form is a workable piece of legislation, is for the court to decide: N. R. Bagley Co., Inc. v. Cameron, 282 Pa. 84, 127 A. 311 (1925); Statutory Construction Act, supra, section 55. However, no part of the ordinance has been held to be invalid. Plaintiff would equate the exclusion of certain charitable entities from the effect of the ordinance to invalidity of that portion of the ordinance delineating the entities subject to the ordinance. The principal thrust of plaintiffs' argument is that, since the Supreme Court has decided that organizations of public charity are not subject to the ordinance and that these organizations would have constituted the largest source of tax revenue under the ordinance; that now, by reason of their exclusion, the revenue anticipated will not be realized and that the tax will fall on fewer organizations such as plaintiffs, this court should thereby declare the ordinance invalid. Where a taxing statute is otherwise valid it is not the function of the court to pass on the wisdom thereof because it may affect a limited number of potential taxpayers: Philadelphia v. Smith, 412 Pa.

262, 194 A. 2d 177 (1963); Commonwealth v. Girard Life Ins. Co., 305 Pa. 558, 158 Atl. 262 (1932).

We conclude that the exclusion of purely public charities from the effect of the ordinance does not of itself render the ordinance invalid as an unworkable piece of legislation.

### III.

Does the Enabling Act limit Pittsburgh's power to tax plaintiffs not in excess of two mills on all food, drink and refreshments?

The ordinance imposes a tax at the rate of six mills on each dollar of volume of the gross annual receipts. Plaintiffs contend that the six mill rate is invalid on the gross receipts received by them from food, drink and refreshments. They argue that since the Superior Court in Duquesne Club v. Pittsburgh, supra, decided that Duquesne is not subject to the Pittsburgh mercantile license tax which is levied at the rate of two mills and that the mercantile tax only applies to establishments serving food, drink and refreshments for profit, the ordinance violates the uniformity clause of the Constitution of Pennsylvania, art. VIII, sec. 1.

Pittsburgh, on the other hand, argues that the mercantile license tax reaches wholesale and retail dealers; the business privilege tax reaches the privilege of doing all other types of business; that these two ordinances have been held to be reasonable classifications by our appellate courts and accordingly can be taxed at different rates; that the institution and service privilege tax is a tax imposed on the privilege of nonprofit entities providing a service in areas different than that covered by the mercantile and business privilege tax ordinances; that this is a reasonable classification and can be taxed at a different rate and, accordingly, does

not impinge the uniformity clause of the Pennsylvania Constitution.

As this court views the problem, we need not determine the righteousness of the arguments of either party in that we feel they both have overlooked the basic question involved, namely, the power of Pittsburgh to enact taxing legislation.

It is well established that a municipality's power to tax is statutory and must be derived from an enactment of the General Assembly. Mr. Justice Elkin summarized the law in Federal St. & Pleasant Valley Passenger Railway Company v. Pittsburg, 226 Pa. 419, 75 A.662 (1910), at page 422 where he stated:

"The burden is always upon the taxing authority to point to the act of assembly which authorizes the imposition of the tax claimed. Taxation is a sovereign state governmental power not possessed by municipalities or municipal subdivisions unless delegated to them. In other words, municipalities have no implied power of taxation and must look to the statutory grant for such authority as they possess in the imposition of taxes. . . ."

The court then held that there was nothing by way of legislation which authorized the then consolidated City of Pittsburg to tax the real estate of a street railway company situated in the then City of Allegheny. This same principle was applied in Pittsburg, Allegheny & Manchester Traction Co. v. Pittsburg, 226 Pa. 429, 75 A. 665 (1910), wherein the only difference from Passenger Railway Co. case, supra, was the character of the real estate involved.

The enabling act empowers certain political subdivisions including cities of the second class such as Pittsburgh to levy taxes subject to various limitations. Section 8 of the enabling act, entitled "Limitations on rates of specific taxes" provides:

"No taxes levied under the provisions of this act shall be levied by *any political subdivision* on the following subjects exceeding the rates specified in this section:

(2) On each dollar of the whole volume of business transacted by wholesale dealers in goods, wares and merchandise, one mill, by retail dealers in goods, wares and merchandise and by proprietors of restaurants *or other places where food, drink and refreshments are served,* one and one-half mills; except in cities of the second class, where rates shall not exceed one mill on wholesale dealers and two mills on retail dealers and proprietors." (Italics supplied.)

It is well-established principle of construction that "every law shall be construed, if possible to give effect to all its provisions": Statutory Construction Act, sec. 51, supra; Stollar v. Continental Can Co., 407 Pa. 264, 180 A. 2d 71 (1962). In construing tax statutes, we must be mindful of the principle set forth in Fischer v. Pittsburgh, 178 Pa. Superior Ct. 16, 112 A. 2d 814 (1955), at page 22 wherein Judge Woodside wrote, in part, that:

" . . . where a statute authorizing the imposition of a tax contains a clause limiting the authority of a municipality to impose the tax conferred by act, such clause [is] to be strictly construed against . . . the municipality under the rule that acts authorizing municipalities to impose taxes must be strictly construed."

The foregoing principle is in conformity with the Statutory Construction Act, sec. 58, supra, as discussed in Commonwealth v. Allied Bldg. Credits, Inc., 385 Pa. 370, 123 A. 2d 686 (1956), wherein Justice Chidsey stated that a taxing statute must be strictly construed and any doubt or uncertainty as to the imposition of the tax must be resolved in favor of the taxpayer, and

words imposing a tax should be clear and unambiguous and words cannot be extended by implication.

The phrase in the Enabling Act, sec. 8(2) " . . . or other places where food, drink and refreshments are served," is clear and unambiguous and means that the tax limitation applies to all places where food, drink and refreshments are served. If the legislature had intended to exclude the limitation from application to establishments such as the plaintiffs it could very easily have added words to the effect, "except establishments existing by virtue of a non-profit charter." Certainly, the legislature was aware of the existence of "other places where food, drink and refreshments are served," such as plaintiffs and having this knowledge did not choose to exclude places such as plaintiffs from the limitation.

Defendant in its argument wants this court by implication to say that organizations such as plaintiffs are not "other places where food, drink and refreshments are served." This the court cannot do in face of the clear mandate of the enabling act.

This is not in contradiction of the Superior Court's holding in Duquesne Club v. Pittsburgh, supra. The court in that case held that since the mercantile tax applied to a profit making organization, the Duquesne was a nonprofit organization and, therefore, its service of food, drink and refreshments were not subject to the mercantile tax. It did not decide whether Duquesne could or could not be taxed on the service of food, drinks or refreshments.

Pittsburgh's taxing power as herein exercised derives from the enabling act which specifically limits its power to tax each dollar of the whole volume of business transacted by "other places where food, drink and refreshments are served," to a maximum of two

mills. Plaintiffs being "other places where food, drink and refreshments are served," are not subject to the six mill rate on their gross receipts from the service of food, drink and refreshments.

## IV.

Is the ordinance so vague and indefinite as it applies to plaintiffs as to be unenforceable and therefore unconstitutional?

The rule of law relied on by plaintiffs is that where a statute is so vague, indefinite and uncertain that the court is unable to determine with any reasonable degree of certainty what the legislature intended, or is so incomplete or conflicting and inconsistent in its provisions that it cannot be executed is invalid. See Wilcox v. Penn Mutual Life Insurance Co., 357 Pa. 581 and 595, 55 A. 2d 521 (1947); Miller v. Belmont Packing & Rubber Co., 268 Pa. 51, 63, 110 Atl. 802 (1920). We are also not unmindful of the principle of constitutional law that a plaintiff contesting the constitutionality of a statute must be adversely affected by the provision attacked before there is a standing to raise a constitutional question: 7 P. L. Encyc., Constitutional Law, §18, page 211; Rich Hill Coal Co. v. Chesnut, 355 Pa. 13, 47 A. 2d 801 (1946).

Plaintiff's principal argument is that the word "service" contained in section 3[5] of the ordinance is vague and indefinite.

Section 2(e) of the ordinance defines "service" as used in section (3) as:

 "(c) 'Service'—Carrying on or exercising within the City of Pittsburgh, medical, educational, social,

---

[5] See footnote 4.

recreational, vocational, or any other type of service for which a charge is collected."

As the ordinance is applied to plaintiffs, the meaning of section 3 and the word "service" is clear and definite. The Superior Court in the Duquesne Club v. Pittsburgh, supra, at page 432, clearly stated after considering the whole record, that Duquesne is carrying on a "service" within the City of Pittsburgh, wherein Judge Hirt stated:

"Duquesne Club supplies the various services, here involved, not for profit but for the convenience and comfort of its members. In the sale of food, liquor, cigars and cigarettes or in making a charge to its members and their guests for the use of billiard and pool tables, the club therefore was not conducting a business . . ."

Plaintiffs were incorporated as nonprofit corporations in the late 1800's by the Common Pleas Court of Allegheny County. In each of the charters they declared their purpose to be ". . . the maintenance of a club for *social* enjoyment(s)." In view of the declared purpose of both plaintiffs, there is no difficulty in determining what "service" they are rendering that is subject to taxation. Section 2(c) of the ordinance defines "service" to include "social and recreational service," exactly the purpose for the existence of plaintiffs. Accordingly, the ordinance is not unreasonably vague or indefinite as to be constitutionally unenforceable.

For the foregoing reasons, we hold the ordinance to be valid; however, Pittsburgh exceeded its power in imposing a tax rate of six mills on the gross receipts of plaintiffs from the service of food, drink and refreshments and a verdict will be rendered in favor of plaintiffs for the taxes paid thereon in excess of two mills.