## Rural Land Co., Inc., v. Upper Makefield Township School District

*Bowen & Valimont*, for plaintiff.

*Sidney T. Yates*, for defendant.

SATTERTHWAITE, J., January 16, 1959.—This is an action in equity to enjoin the collection of an allegedly illegal tax sought to be imposed by defendant school district. No objection has been raised to the form of the proceedings in equity, nor has any challenge been made to the status of plaintiff as an aggrieved party actually affected thereby. The action was instituted by complaint to which defendant filed an answer admitting, or failing sufficiently to deny, the operative facts. The matter is now before the court on plaintiff's motion for judgment on the pleadings.

The resolution imposing the tax in question was adopted by defendant on May 6, 1957, under the purported authority of the Act of June 25, 1947, P. L. 1145, as amended, 53 PS §6851, et seq., popularly

known as the "Tax Anything" Act or Act 481. The title thereof was as follows:

"A RESOLUTION providing for the assessment, levy and collection of a tax, for general revenue purposes, upon certain transactions and privileges relating to new construction and additions constituting new dwelling units used for residences within the School District of Upper Makefield Township; imposing duties and conferring powers upon the hereinafter designated tax collector; prescribing the method and manner of collecting the tax imposed; and imposing penalties."

Section 1, the only one which can be considered as amounting to an operative levy or assessment of the disputed tax, is as follows:

"*Section 1*. The Board of School Directors of Upper Makefield Township hereby resolves that a tax for general revenue purposes be and hereby is levied and assessed at the rate of One Per Cent (1%) on the cost of any new residential construction or on any new addition or additions which constitute a new dwelling unit to be annexed to any existing or new residential structures within the School District of Upper Makefield Township to be used and occupied as living quarters."

Section 2 defines the term "cost" for purposes of the resolution, as follows:

"*Section 2*. Cost is defined as the actual estimated amount to be expended for labor, materials and overhead in the construction of the residential unit or addition thereto as reflected by the amount of construction evidenced by the building permit. In the event that no monies are to be expended for the aforesaid or any part or parts thereof, then the tax shall be paid on the basis of an estimated cost made by the builder. Should the School Board feel that the declared cost is low, it

reserves the right to audit the books and records of the builder at any time within thirty (30) days after the completion of the building or addition. If the builder's estimate is twenty per-cent (20%) or more below the cost as found by the School Board, then the builder shall be liable for all of the penalties as provided by the Resolution."

Section 3 requires the tax to be paid by the person, association or corporation applying "for the building permit to build the new structure or addition," and designates such applicant as the "builder" for purposes of the resolution. Section 4 constitutes "The Zoning Officer of Upper Makefield Township" as the collector of the tax; it further provides that the tax is due and payable upon the issuance "of the building permit" and specifies that the fact of payment thereof shall be noted "on the building certificate before it is issued." Neither sections 2, 3, or 4, nor any other provisions of the resolution, further identify or otherwise elaborate upon the meaning of the terms "building permit," "zoning officer" or "building certificate."

The resolution, adopted on May 6, 1957, of course could not continue in force for more than one year and, therefore, is presently no longer in effect: Section 1(A) of the Act of 1947, supra, as amended by the Act of May 27, 1953, P. L. 234, 53 PS §6851. The questions involved, however, have been saved from becoming moot by a stipulation of counsel to the effect that an identical resolution was also adopted by defendant school district for the fiscal year 1958-59, and that the within proceedings should be considered just as though they had been filed under the latter.

The complaint identifies plaintiff as a corporation organized under the laws of this Commonwealth and engaged in the business of constructing new homes upon certain tracts of land of which it is the owner located within the Township of Upper Makefield.

It further avers that on January 10, 1958, plaintiff applied to the zoning officer of Upper Makefield Township for a building permit to construct a house on a certain lot therein, which building permit was refused on March 5, 1958, upon plaintiff's refusal to pay the one percent tax under consideration on the estimated cost of construction therein set forth in the amount of $20,000.

The complaint concludes by setting forth eight specified grounds upon which it is contended the resolution should be declared unconstitutional or illegal, alleging plaintiff's status as an aggrieved party and praying that the resolution be judicially declared illegal and void and that defendant be enjoined from attempting to collect from plaintiff the taxes purportedly assessed thereby. Defendant's answer, of course, denies the legal conclusions alleged as the grounds for invalidity, but raises no issue of fact presently material.

In the view we take of the case, the only objection necessary, or even possible, to be considered presently is that the terms of the resolution are so vague, uncertain and indefinite that the legal subject of the tax and certain phases of the actual administration thereof cannot be ascertained therefrom. If plaintiff's contention in this respect be correct, the necessity for holding such deficiency to be fatal to the validity of the enactment is especially emphasized, since many of plaintiff's other contentions are necessarily founded on hypothetical and alternative assumptions as to the nature of the tax and the resulting impact of well-established constitutional or other principles of, or limitations upon, the taxing power arising as legal consequences thereof. For example, plaintiff's arguments also involve discussions of the significance of a license fee as contrasted with a revenue measure, or

of the various ramifications and incidents of a property tax as against those arising from an excise levy, or of the effect of a discriminatory exaction as opposed to a tax uniformly applicable to all objects of a reasonable and proper classification of taxable subjects. Such determinations obviously cannot be made, or the legal effect thereof deliberated, if the very subjects of taxation cannot reasonably be ascertained with certainty from the resolution.

The title of the enactment expresses the purpose to impose a tax upon *"certain* transactions and privileges *relating to* new construction and additions constituting new dwelling units used for residence . . ." (Italics supplied.)

The operative text of the resolution, however, nowhere specifies what such "certain" transactions and privileges should be; while the intention is apparent to tax something "relating to" new construction, such "something" is never spelled out. Section 1 simply levies a tax in a vacuum, so to speak, to be measured at the rate of one percent of the cost of new construction or additions. It is not even clear upon whom the tax is levied, although section 3 indicates that the "builder" is required to make the actual payment. The phrases "on the cost of any new residential construction or on any new addition" either do not designate the subject of taxation, or, if intended to do so, involve conflicting and confusing concepts, the former apparently purporting to be an excise tax of some sort measured by cost, whereas the latter would clearly be a property tax and probably invalid for other reasons. In view of the title, it seems probable that the intention was that cost, both of new construction and of additions, should be the measure of some sort of tax based on an unspecified incident or transaction somehow related to new residential construction, and that

the word "on" should be read as though it were "of" in both phrases, thus providing alternative bases to which the percentage rate could apply. Regardless of these conjectures, however, we believe that no taxable subject is stated in the resolution.

Moreover, other uncertainties also appear. For example, what is the meaning of the clause "any new addition or additions which constitute a new dwelling unit to be annexed to any existing or new structures . . . to be used and occupied as living quarters" as used in section 1? Does this apply to an addition which does not constitute a new dwelling unit? Does it include accessory rooms, such as recreation rooms, laundry rooms or garages which might or might not be considered "to be used and occupied as living quarters"? Furthermore, in section 2, the term "cost" is defined as "the actual estimated amount to be expended for labor, materials and overhead" in the relevant construction. Had the definition stopped there, and apart from administrative difficulties which might arise in practice from the words "estimated" and "overhead," this language would appear to provide a more or less certain and objective standard for the computation of the tax. However, the clause in question adds another element: "as reflected by the amount of construction evidenced by the building permit." We can only guess as to the meaning of this language. The nature of the building permit and the person and authority by which it be issued are totally unidentified. We have no indication as to what is intended by the word "reflected," and certainly the phrase "amount of construction" is ambiguous.

Similar observations might be made as to the remaining provisions of section 2 and other sections of the resolution. For example, what standard is to control the estimate of cost by the builder where no

monies are to be expended, or to guide the school board in determining whether it should "feel" the declared cost to be low? What is the effect or consequence of its audit of the books of the builder, assuming it may "reserve" the power to do so? Is the "cost as found by the School Board" subject to any limits or other objective standards apart from the board's own arbitrary opinion in determining the 20 percent tolerance apparently allowed by the last sentence of section 2? Is any distinction intended in cases of underestimated costs for penalty purposes between those where the deficiency is more than 20 percent and those involving less than that amount, and, if so, what is the distinction? Do possible questions of lack of uniformity and discrimination arise therefrom? Is any significance to be attached to the differing phrases "building permit" and "building certificate" as used in section 4, and in any event does the "Zoning Officer" of the township issue either, he presumably being authorized to act in zoning matters?

In view of the absence of a taxable subject, as well as the ambiguities and possibilities of varying interpretations of uncertain language, we beleve the ordinance to be invalid under the authority of Panther Valley Television Company v. Summit Hill Borough, 376 Pa. 375, That case involved the legality of a tax sought to be imposed by a borough on persons or corporations engaged in the business of capturing television signals within the borough by special towers and transmitting the same for sale. The ordinance provided for a fee of $100 for each tower and further required that the taxpayer "where transmission of signals is for sale to persons residing outside the limits of the borough, shall pay . . . annually . . . a franchise tax equal to five (5) percentum of its gross receipts from business done everywhere, . . . [and

if] for sale to persons residing within the Borough . . . the rate of tax . . . shall be four (4) per centum."

The Supreme Court affirmed a ruling that the tax on the tower was invalid because it amounted to a tax on property of a corporation already subject to income and capital stock taxes due the Commonwealth. It further held, notwithstanding the designation of the levy as a "franchise tax," that the gross receipts impost was also invalid because it was vague and indefinite as to what was intended to be taxed. In the latter connection, the court referred to the borough's argument that it intended to tax the privilege of use of poles and wires along the streets of the municipality, but dismissed the same with the observation that the ordinance in fact did not say so, and that although it clearly set up a tax of some sort, the same was invalid for failure to indicate what was being taxed. This observation is especially applicable here where the levy is not even characterized as a franchise tax. Moreover, again with even more cogent present applicability, the opinion further quoted with approval from Willcox v. Penn Mutual Life Insurance Co., 357 Pa. 581, 595:

" 'Where a statute is "so vague, indefinite and uncertain that the courts are unable to determine, with any reasonable degree of certainty, what the legislature intended, or is so incomplete or conflicting and inconsistent in its provisions that it cannot be executed, it will be declared inoperative." ' "

### Order

And now, January 16, 1959, for the reasons stated in the foregoing opinion, plaintiff's motion for judgment on the pleadings is hereby granted, and judgment is hereby entered in favor of plaintiff and against defendant, declaring the within mentioned

712

resolutions to be void and restraining defendant from collecting or attempting to collect from plaintiff the taxes purported to be levied thereby. Costs to be paid by defendant.